IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TIFFANY NGO, Administrator
Of the Estate of Brooke Winek,
Deceased,

    Plaintiff,

v.                                          Civil Action No. 3:24cv76

WASHINGTON COUNTY, VA
SHERIFF BLAKE ANDIS, in
his official and personal
capacities; and WASHINGTON
COUNTY, VA SHERIFF'S OFFICE;
and WASHINGTON CO., VA
DETECTIVE WILLIAM SMARR,
in his official and personal
capacities; and MICHAEL CAREY,
Administrator of the Estate of
Austin Lee Edwards, Deceased,

    Defendants.

R.K.W., a minor, by and
Through her next friend,
TIFFANY NGO,

    Plaintiff,

v.                                          Civil Action No. 3:24cv77

WASHINGTON COUNTY, VA
SHERIFF BLAKE ANDIS, in
his official and personal
capacities; and WASHINGTON
COUNTY, VA SHERIFF'S OFFICE;
And WASHINGTON COUNTY, VA
DETECTIVE WILLIAM SMARR;
In his official and personal
Capacities; and MICHAEL CAREY,
Administrator of the Estate of
Austin Lee Edwards, Deceased,

    Defendants.

MEMORANDUM OPINION

This matter is before the Court in the above-captioned cases which are related because they arise out of the same circumstances. In Civil Action No. 3:24cv76, Tiffany Ngo, as Administrator of the Estate of Brooke Winek, Deceased sued four defendants. The remaining defendants are Washington County Va Sheriff Blake Andis in his official and personal capacities and Michael Carey, Administrator of Estate of Austin Lee Edwards, deceased. (Hereafter the case will be referred to as either "Case No. 76" or "Ngo").[1] In Civil Action No. 3:24cv77, R.K.W., a minor sues by and through her next friend Tiffany Ngo. Hereafter the case will be referred to as either "Case No. 77" or "R.K.W." As in 3:24cv76, the remaining defendants are Washington County, VA Sheriff Blake Andis in his official and personal capacities and Michael Carey, Administrator of Estate of Austin Lee Edwards, deceased.[2] Both cases are before the Court on Andis' MOTION TO TRANSFER VENUE (ECF No. 18 in 3:24cv76 and ECF No. 20 in 3:24cv77) (the "Motions"). Having considered the Motions, the supporting, opposing and reply

---

[1] Ngo originally sued the Washington County, VA Sheriff's Office and Washington County, VA Detective William Smarr. in his official and personal capacities. The case against both of those defendants was voluntarily dismissed (ECF Nos. 26 and 47).

[2] As is the case in Ngo, the Washington County, VA Sheriff's Office and Washington County, VA Detective William Smarr in his official and personal capacities have been voluntarily dismissed. (ECF Nos. 30 and 53).

2

memoranda, the MOTION TO TRANSFER VENUE (ECF No. 18 in Case No. 76) and the MOTION TO TRANSFER VENUE (ECF No. 20 in Case No. 77) will be granted.[3]

**BACKGROUND**

For purposes of the Motions, the pertinent facts are essentially the same, and are presented, as they are recited in the virtually identical Complaints.

Austin Lee Edwards, who is now deceased, is alleged to have murdered three people in Riverside, California on November 20, 2022 and to have kidnapped another person on that day. The victims of the murder were Brooke Winek (R.K.W.'s mother), Mark Winek (R.K.W.'s grandfather), and Sharon Winek (R.K.W.'s grandmother). R.K.W. was the person abducted. It is alleged that the "deaths and abduction were the direct and proximate result of the Washington County Sheriff's violation of the Fourteenth Amendment of the United States Constitution, actionable pursuant to 28 U.S.C. § 1983 . . ." (ECF No. 1, ¶ 9 in Case Nos. 76 and 77).

According to the Complaint, Edwards met R.K.W. online through her Instagram account in the summer of 2022. The two began

---

[3] Michael Carey, Administrator of the Estate of Austin Lee Edwards also is named as a defendant in both cases. Carey was served in both cases on June 6, 2024. However, Carey has filed no Answer. Nor has he appeared herein.

3

communicating on Instagram and another program known as Discord. Edwards was alleged to be in Chesterfield County and in Richmond, Virginia when he made those communications. At the time, R.K.W. was 16 years old and Edwards was 28 years old. However, in the online communications, Edwards represented to R.K.W. that he was 17 years old and that he would be turning 18 on September 1, 2022. The communications extended throughout the summer and early fall of 2022, according to the Complaint; and, during that timeframe, R.K.W. and Edwards messaged each other and sent each other voice recordings. Edwards sent R.K.W. gifts, including jewelry, paid for Uber Eats and Doordash deliveries to her residence, sent her groceries, money and gift cards, and helped her buy birthday gifts for her friends. R.K.W. kept this relationship with Edwards secret from her family. It is alleged that R.K.W. broke off the online relationship with Edwards not long after Halloween 2022 because Edwards had become clingy and pushy and wanted R.K.W. to engage in activity of a sexual nature, including sending him naked photographs of herself on Instagram.

On November 16, 2022, the Washington County Sheriff's Office hired Edwards as a Patrol Deputy Sheriff. Previously, Edwards had been employed by the Virginia State Police as a trooper, a position he had resigned in October 2022.

On November 23, 2022, Edwards, seven days after having been retained as a Patrol Deputy Sheriff on November 16, 2022, took time off from work and began a two-day driving trip from Virginia to Riverside, California. The purpose of the trip was to be with R.K.W.

Two days later, on November 25, 2022, Edwards is alleged to have murdered R.K.W.'s mother, grandmother and grandfather and set the house afire. He used gasoline, an inflammatory agent, and opened the windows and doors of the house so that the fire would spread quickly. Thereafter, Edwards forced R.K.W. into the back seat of his car. It is also asserted that, in committing the murder, arson and kidnapping offenses in California nine days after he was hired, Edwards used the Washington County Sheriff's Office badge and the issued service revolver.

Neighbors noticed that the house was on fire and called the authorities, inter alia, the Riverside California Police Department which shortly thereafter determined the description of the vehicle and traced Edwards through a ping and then a pursuit began. Edwards' car became stalled during the pursuit. He directed R.K.W. to leave the vehicle and then shot and killed himself.

It is alleged that, in vetting Edwards for employment, Detective Smarr did not contact the references that Edwards had

5

supplied; that Detective Smarr ignored the statement by a previous employer (the Virginia State Police) that was suggestive of Edward's troublesome background; and that Smarr ignored the fact that Edwards had left significant parts of the employment application blank, i.e., queries respecting previous convictions of a crime; questions respecting having been detained by a law enforcement officer; or ever having acted violently toward any person; or having been a subject of a civil restraining order, protective order or contact order. According to the Complaints, Detective Smarr represented that he had checked the Central Criminal Record Exchange for Edwards, but he did not actually do so as is evidenced by the fact that those records reflect that Edwards had a 2016 detention for psychiatric evaluation after threatening to kill his father and himself and that Edwards had been taken into custody after he cut his hand and acted inappropriately when the emergency technicians arrived and then was detained pursuant to an emergency custody order and was thereafter judicially transferred to a psychiatric facility. In both cases, the theory of liability is that an adequate background check would have shown that Edwards' right to own a gun was revoked as a result of this incident in 2016.

The conduct in which Edwards engaged in communicating with R.K.W. occurred in the summer of 2022 and concluded not long after

Halloween 2022 when R.K.W. broke off the online relationship with Edwards. Edwards was in Chesterfield County and Richmond, Virginia during the online communications with R.K.W.

Edwards resigned from the Virginia State Police in October 2022 and was hired by the Washington County Sheriff's Office on November 16, 2022. The record does not disclose when Edwards applied for the position for which he was hired by the Washington County Sheriff's Office.

Nor does the record disclose when Detective Smarr made the allegedly deficient pre-employment inquiries into Edwards' background. However, it appears from the record that, at the time of all his actions and alleged inactions in the employment screening process, Detective Smarr was in Washington County.

Seeking recovery of the damage and loss arising out of the tragic events that occurred in Riverside, California on November 25, 2022 that were alleged results of the deficient background investigation which allowed Edwards to be hired as a Washington County Deputy Sheriff, the Complaint in Case No. 76 asserts three claims against Andis: Count I (an alleged violation of 42 U.S.C. § 1983 described as a "FAILURE TO SCREEN"); Count IV (negligent hiring); and Count V (a survival action). The Complaint in Case No. 77 also asserts three claims against Andis: Count I (an alleged violation of 42 U.S.C. § 1983 for a "FAILURE TO SCREEN");

7

Count VIII (vicarious liability); and Count X (negligent hiring).[4]

With this factual and procedural background in mind, we turn to an examination of Andis' MOTIONS TO TRANSFER the venue to the Western District of Virginia. Carey has neither appeared in the cases nor has filed a position on the issue of transfer.

## DISCUSSION

The rules governing venue are set by 28 U.S.C. § 1391. Transfer of venue is governed by 28 U.S.C. § 1404 which provides that: "a district court may transfer any civil action to any other district or division where it might have been brought. . . ." 28 U.S.C. § 1404(a). When considering a motion to transfer venue under § 1404(a), the Court must decide: (1) whether the action could have been brought in the transferee forum; and (2) whether the interest of justice and convenience of the parties warrants a transfer. Koh v. Microtek Int'l, Inc., 250 F. Supp.2d 627, 630 (E.D. Va. 2003). In deciding whether transfer is appropriate, district courts are instructed to consider four factors: "(1) the weight accorded to plaintiffs' choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Services, Inc., 791 F.3d 436, 444

---

[4] The other remaining claims are asserted against Michael Carey, Administrator of the Estate of Austin Lee Edwards, Deceased.

(4th Cir. 2015).

Here the first factor (whether the action could have been brought in the putative transferee forum[5]) is not disputed.

That brings the analysis to whether the interest of justice and the convenience of the parties warrant transfer to the proposed transferee forum.

A. Plaintiff's Choice of Venue

While ordinarily the plaintiff's choice of venue is of considerable significance, that rule applies where the chosen forum is the plaintiff's home forum and where the claims bear some substantial connection to the chosen forum. Where, as here, the plaintiff, the Estate of Brooke Winek and R.W.K., respectively, are residents of California and very little, if any, of the conduct constituting the offense occurred in the Eastern District of Virginia, that rule calls for no deference to the plaintiff's choice of venue.

The record so far establishes that the hiring decisions respecting the hiring of Edwards took place in the Western District of Virginia and all of the unlawful conduct at issue took place in Riverside, California. The injuries in this case and the actions

---

[5] The Abingdon Division of the United States District Court for the Western District of Virginia.

which precipitated those injuries occurred in Riverside, California where Edwards committed the crimes of murder, arson and abduction and in Abingdon, Virginia where Detective Smarr conducted the allegedly deficient background investigation that lies at the core of all of the claims. In other words, the claims do not bear a substantial connection to the Eastern District of Virginia. Accordingly, this factor favors transfer.

B.  **Witness Convenience and Access**

The record teaches that the key witnesses reside in the Western District of Virginia. For instance, six or seven witnesses who are in the Western District of Virginia were involved in reviewing Edwards' application and background check. All of them will be witnesses. It is also likely that a witness from the Virginia State Police might be called to testify. It appears that witness is located in Richmond, Virginia, but that does not override the fact that most of the witnesses are in the Western District of Virginia.

R.K.W. is a resident of California and Winek's estate and the beneficiaries of Winek are in California as well. It is argued that, because Richmond has an international airport, it would be more convenient for witnesses and parties to travel to Richmond than to Abingdon, Virginia. But the fact of the matter is that witnesses coming from California will have to transfer planes

10

whether they fly to Richmond or Roanoke or Bristol (the airports closest to Abingdon).

C. The Interest of Justice

The principal acts giving the rise to Andis' liability occurred in the Western District of Virginia and the claims have no meaningful connection to the Eastern District of Virginia. It is true that Edwards' communications with R.K.W. provided the groundwork for the relationship out of which grew the terrible conduct in which Edwards engaged in California. However, the gravamen of the claims is conduct or inaction that occurred (or did not occur) in the Western District of Virginia and in California so that the interest of justice favors transfer to the Western District of Virginia.

## CONCLUSION

For the foregoing reasons, the MOTION TO TRANSFER VENUE (ECF No. 18 in Case No. 76) and the MOTION TO TRANSFER VENUE (ECF No. 20 in Case No. 77) will be granted.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 15, 2024

11